IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 09-475-1 |
| v. | : |
| WILLIAM JACKSON | : |

**NORMA L. SHAPIRO, J.**                                                                                          **AUGUST 10th, 2012**

## MEMORANDUM

On October 5, 2011, defendant William Jackson ("Jackson") was convicted by a jury of: (Count I) possession with intent to distribute cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1); (Count II) carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); (Count III) possession of marijuana in violation of 21 U.S.C. § 844(a); and (Count IV) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

Jackson filed a timely post-trial motion for acquittal and arrest of judgment under Federal Rules of Criminal Procedure 29 and 34, or, in the alternative, for a new trial under Federal Rule of Criminal Procedure 33. The court will deny the motion for acquittal on Counts I and II because the government offered sufficient evidence at trial for a reasonable jury to convict Jackson of possession of crack with intent to distribute and carrying a firearm during and in relation to a drug trafficking offense. The court will deny the motion for acquittal on Count IV and the motion for arrest of judgment because 18 U.S.C. 922(g)(1) is not unconstitutional under the Commerce Clause.[1] The court will deny the motion for a new trial because the court did not

---

[1] Jackson did not move for acquittal on Count III.

err when it denied Jackson's pretrial motion to suppress.

I.      BACKGROUND

On December 7, 2006, Drug Enforcement Administration Special Agent Randy Cole ("Agent Cole"), who was then a Philadelphia Police Officer, and Philadelphia Police Officer Gerald Logan ("Officer Logan") reported to Kelli's Bar on Kensington Avenue in Philadelphia. They were responding to a radio call relaying an anonymous informant's tip that a black male wearing a black Adidas hooded sweatshirt and fatigue pants possessed a gun. Upon entering Kelli's Bar, they spotted a man, later determined to be Jackson, seated at the bar dressed in a black Adidas hooded sweatshirt and blue jeans. Agent Cole and Officer Logan approached Jackson and asked him if he would accompany them to the back of the crowded, noisy bar so that they could talk.

Jackson agreed to speak with Agent Cole and Officer Logan at the rear of the bar, and walked to that location with Agent Logan beside him and Officer Cole behind him. Agent Logan placed his hand on Jackson's shoulder to guide him to the back of the crowded, noisy bar; Officer Cole may have put his hand on Jackson's back for the same reason. While walking to the back of the bar, Jackson informed Agent Cole and Officer Logan he was carrying a firearm. When they reached the back of the bar, Agent Cole and Officer Logan ordered Jackson to place his hands on the wall, seized his firearm, and placed him under arrest. Outside the bar, Officer Logan searched Jackson and recovered from his sweatshirt pocket 42 small, clear ziplock bags containing crack, and one glass jar containing marijuana.

Jackson moved to suppress his statement to Agent Cole and Officer Logan that he possessed a firearm, and all physical evidence, including the firearm, 42 packets of crack, and the

glass jar of marijuana.  Jackson contended he was unreasonably seized by Agent Cole and Officer Logan when they touched him while walking to the back of the bar, so his statement and all physical evidence should be suppressed as "fruit of the poisonous tree."  The court, after a hearing on the suppression motion, denied it because Jackson consented to accompany Agent Cole and Officer Logan to the back of the bar and in the circumstances, they touched him only to guide and communicate with him, not to restrain him.  *United States v. Jackson*, 2011 WL 2580758, at *3 (E.D. Pa. June 28, 2011).

**II.    DISCUSSION**

    A.    <u>Motion for Acquittal</u>

Federal Rule of Criminal Procedure 29 provides: "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Jackson bears a heavy burden to show an insufficiency of the evidence; the court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence."  *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (citation omitted).  The court must "draw all reasonable inferences in favor of the jury's verdict," and should only find insufficient evidence to sustain a conviction when the prosecution's failure to prove its case is clear.  *Id*. at 476-77.

        *1.    Count I*: *Possession with intent to distribute*

Jackson does not dispute he possessed crack; he contends the crack was for his personal use and the evidence was insufficient for a reasonable jury to find he intended to distribute the crack.  To sustain a conviction on Count I, under 21 U.S.C. § 841(a)(1), the government must

show beyond a reasonable doubt that Jackson "knowingly and intentionally possessed the drugs with the intent to distribute them." *United States v. Iafelice*, 978 F.2d 92, 95 (3d Cir. 1992). Proof of Jackson's intent to distribute crack can be made through circumstantial evidence. *United States v. Johnson*, 302 F.3d 139, 149 (3d Cir. 2002).

Although the government did not offer surveillance evidence of Jackson distributing crack, or evidence from a confidential informant used to make controlled purchases from Jackson, Officer Logan found 42 individual packets of crack when he searched Jackson. A reasonable jury may find the manner in which illegal drugs are packaged to be indicative of an intent to sell. *See id*. at 149-50 (discovery of scores of small plastic bags of crack and marijuana sufficient evidence to sustain a conviction under § 841(a)); *see also United States v. Davis*, 397 F.3d 173, 180-81 (3d Cir. 2005) (substantial evidence of possession with intent to sell when police recovered 44 packets of crack from defendant).

Detective Chris Marano ("Detective Marano"), the government's expert, testified in his experience as an undercover narcotics agent, nine packets of crack is the maximum number an individual would carry for personal use. Oct. 3, Tr. at 63:1-4, 76:25-77:7. He testified possession of more than nine packets of crack would be consistent with an intent to distribute. Oct. 4, Tr. at 9:21-10:3. He testified an individual user with 42 packets of crack would risk being robbed, and that a user could obtain more crack for a cheaper price by purchasing it in bulk, instead of in individual packets. Oct. 3, Tr. at 63:12-64:7, 82:15-25.

Agent Cole testified he and Officer Logan did not find any paraphernalia for personal use when they searched Jackson. *Id*. at 38:17-39:2. Although Agent Cole testified the glass jar found on Jackson "probably could" be used to vaporize crack to be inhaled, the glass jar did not

have any burn marks on it. *Id*. at 49:5-50:17. Detective Marano testified a jar with no charred ends containing marijuana would not be commonly used as a crack pipe. *Id* at 64:23-66:20. He testified it would not make sense to use a glass jar to smoke crack, because the user would burn his or her fingers when the glass heats. Oct. 4, Tr. at 6:15-7:10. He admitted it would be possible to place a glass jar on foil, vaporize crack in the jar, and use a straw to ingest it. *Id*. at 15:6-17. Detective Marano also admitted that the presence of money would be consistent with an intent to distribute drugs, Oct. 3, Tr. at 67:18-69:17, but Agent Cole testified he and Officer Logan did not find any money on Jackson when they searched him. *Id*. at 38:15-16, 47:10-12.

A reasonable jury may find the presence of a firearm with illegal drugs indicative of an intent to sell. *See Johnson*, 302 F.3d at 149 (loaded firearm found with drugs evidence that defendant possessed drugs with intent to distribute); *Davis*, 397 F.3d at 181 ("A factfinder is permitted to give significance to the presence of a gun, particularly when the gun is combined with the presence of drugs.").

Detective Marano testified the presence of a firearm affected his opinion concerning whether an individual was a buyer or distributor of illegal drugs. Oct. 3, Tr. at 64:8-18; Oct. 4, Tr. at 10:4-12. Detective Marano testified after hundreds of arrests, he had never recovered a firearm from a buyer, particularly the type of firearm found on Jackson: "a nice gun, a gun such as that. . . . a Desert Eagle 45, that's an $800 – that's $1,000 gun right there on the street." *Id*. According to Detective Marano:

> Guns and drugs go together.  A gun is an implement used, like any other implement to sell drugs, it's used to protect stash, protect money, protect area, territory, however you want to say it, rival drug dealers, the police, most – most definitely more consistent with a person who's sells.

Oct. 4, Tr. at 10:8-12; *see also United States v. Russell*, 134 F.3d 171, 183 (3d Cir. 1998) ("[G]uns are the tools of the drug trade.").

Jackson was found in possession of 42 individual packets of crack and a loaded firearm. The evidence at trial, viewed in the light most favorable to the government, was sufficient to sustain a rational jury's conviction under § 841(a)(1); the motion for acquittal on Count I will be denied.[2]

### 2.     *Count II: Carrying a firearm during and in relation to drug trafficking*

Jackson does not dispute he possessed a firearm; he contends the evidence was insufficient for a reasonable jury to find he carried the firearm during and in relation to a drug trafficking offense. To sustain a conviction for Count II, under 18 U.S.C. § 924(c)(1), the government must show beyond a reasonable doubt that Jackson, in addition to committing a drug trafficking crime, knowingly carried the firearm during and in relation to drug trafficking activity. *United States v. Bobb*, 471 F.3d 491, 496 (3d Cir. 2006).

"[F]irearms are relevant evidence in the prosecution of drug-related offenses, because guns are the tools of the drug trade." *Russell*, 134 F.3d at 183. The mere presence of a gun is not enough to sustain a conviction under § 924(c). *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004). "[T]he evidence must demonstrate that possession of the firearm advanced or helped

---

[2]Jackson moved for acquittal under Federal Rule of Criminal Procedure 29 at the close of the government's case; the court reserved ruling on the motion. Rule 29 requires the court to decide a motion for acquittal "on the basis of the evidence at the time the ruling was reserved." Accordingly, the court does not consider the testimony of Jackson's expert witness, David Leff, in deciding this motion. Even if the court were not limited to considering the sufficiency of the evidence introduced during the government's case in chief, Mr. Leff's testimony would not so undermine the testimony of Agent Cole and Detective Marano that a rational jury could not have found Jackson guilty beyond a reasonable doubt.

forward a drug trafficking crime." *Id.*

A reasonable jury may find evidence of a firearm found in close proximity to drugs sufficient to show the firearm was carried during and in relation to a drug trafficking offense under § 924(c). *See*, *e.g.*, *id.* at 853 (reasonable to assume firearm found in concealed compartment with nine bags of drugs and money was possessed in furtherance of drug trafficking activities); *United States v. Morgan*, 33 F. App'x 603, 606 (3d Cir. 2002) (unpublished) (sufficient evidence to sustain conviction under § 924(c) when firearms were found in the same apartment as substantial amounts of drugs). Other factors a jury may consider in finding a firearm was carried during and in relation to a drug trafficking offense, in addition to its proximity to drugs, include: (1) the accessibility of the firearm; (2) the type of firearm; (3) whether the firearm is loaded; and (4) the time and circumstances under which the firearm is found. *Sparrow*, 371 F.3d at 853 (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000).

Agent Cole seized a firearm from Jackson after he said he had "a burner," *i.e.*, a firearm. Oct. 3, Tr. at 30:15-22. The firearm was loaded with seven rounds in the magazine and one in the chamber. *Id*. at 32:6-20. Detective Marano confirmed the firearm recovered from Jackson was a "a nice gun, a gun such as that. . . . a Desert Eagle 45, that's an $800 – that's $1,000 gun right there on the street." *Id*. at 64:16-18. Marano testified that "[g]uns and drugs go together." Oct. 4, Tr. at 10:8. After taking the firearm from Jackson, Officer Logan searched him and found 42 packets of crack and a glass vial with marijuana. Oct. 3, Tr. at 33:5-11.

Agent Cole and Officer Logan took a loaded, expensive firearm from Jackson that was easily accessible to him and in close proximity to the crack and marijuana found on him. The

evidence at trial, viewed in the light most favorable to the government, was sufficient to sustain a rational jury's conviction under § 924(c); the motion for acquittal on Count II will be denied.

### 3. Count IV: *Felon in possession of a firearm*

Jackson stipulated at trial to being a convicted felon and did not dispute that he possessed a firearm; he contends 18 U.S.C. § 922(g)(1) is unconstitutional because it does not require the possession of a firearm by a convicted felon to substantially affect interstate commerce. Jackson also contends the government failed to offer evidence his firearm substantially affected or was connected to interstate commerce.

The Commerce Clause of the United States Constitution empowers Congress "[t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. Congress exercised this power to enact § 922(g)(1), which provides:

> (g) It shall be unlawful for any person–
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess *in or affecting commerce*, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1) (emphasis added).

Section 922(g)(1) is "well inside the constitutional fringes of the Commerce Clause" because it contains the jurisdictional element that the firearm is "in or affecting commerce." *United States v. Gateward*, 84 F.3d 670, 671-72 (3d Cir. 1996); *see also United States v. Noe*, 342 F. App'x 805, 806-07 (3d Cir. 2009) (unpublished) (rejecting contention that "the intrastate possession of a firearm does not have a substantial effect upon interstate commerce and, thus, does not constitute the basis for a valid exercise of congressional authority under the Commerce

Clause."); *United States v. Reed*, 173 F. App'x 184, 191 (3d Cir. 2006) (same); *United States v. Hull*, 456 F.3d 133, 136-37 (3d Cir. 2006) (same). Jackson's contention that § 922(g)(1) is unconstitutional does not have merit.

"[T]he transport of a weapon in interstate commerce, however remote in the distant past, gives its present intrastate possession a sufficient nexus to interstate commerce to fall within the ambit of the statute." *United States v. Singletary*, 268 F.3d 196, 200 (3d Cir. 2001). "[T]he Government only must prove the firearm at issue previously moved in interstates commerce to satisfy § 922(g), and is not required to prove a defendant's personal possession of the firearm was in or affected interstate commerce." *United States v. Layne*, 2009 WL 3081645, at *2 (E.D. Pa. Sept. 24, 2009).

Jackson stipulated the firearm seized from him was manufactured outside of Pennsylvania, so it must have moved in interstate commerce in the past. The evidence at trial, viewed in the light most favorable to the government, was sufficient to sustain a rational jury's finding that Jackson's firearm substantially affected or was connected to interstate commerce; the motion for acquittal on Count IV will be denied.

B.   Motion for Arrest of Judgment

Jackson contends the court does not have jurisdiction over Count IV of the indictment because 18 U.S.C. § 922(g)(1) is unconstitutional, and that the indictment fails to allege his possession of the firearm substantially affected interstate commerce. Federal Criminal Rule of Procedure 34 provides: "the court must arrest judgment if . . . the court does not have jurisdiction of the charged offense."

Jackson's contention that the court does not have jurisdiction over Count IV is identical

in substance to his motion for acquittal on Count IV; for the same reasons discussed above concerning his motion for acquittal on Count IV, his motion for arrest of judgment fails.

An indictment charging violation of § 922(g)(1) is sufficient if it charges the defendant "knowingly possessed in and affecting commerce, a firearm." *Gateward*, 84 F.3d at 672. The Jackson indictment charges that he "knowingly possessed in and affecting interstate commerce, a firearm." The indictment sufficiently alleged Jackson's possession of the firearm substantially affected interstate commerce; his motion for arrest of judgment will be denied.

C. Motion for a New Trial

Jackson contends the court erred when it denied his motion to suppress his statement to police officers and all physical evidence, because Agent Cole and Officer Logan seized him when they placed their hands on him while escorting him to the rear of Kelli's Bar. Federal Rule of Criminal Procedure 33 provides the court may grant a motion for a new trial "if the interest of justice so requires." A court should grant a new trial "if it ascertains that the verdict constitutes a miscarriage of justice." *United States v. Rhines*, 143 F. App'x 478, 484 (3d Cir. 2005) (citation omitted). The court may also grant a new trial if there is a need to correct a clear error of law in an evidentiary ruling that had a substantial influence on the jury's decision. *Gov't of V.I. v. Bedford*, 671 F.2d 758, 762 (3d Cir. 1982).

Rule 33 motions "are not favored and should be granted only with great caution 'in the most extraordinary circumstances.'" *Rhines*, 143 F. App'x at 484 (citation omitted). Because the verdict is presumed valid, Jackson bears a heavy burden to demonstrate the court should grant a new trial. *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006).

The Fourth Amendment provides: "The right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.  Evidence discovered during an unreasonable search or seizure is considered "fruit of the poisonous tree," and is inadmissible at trial.  *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963).  The anonymous tip provided to Agent Cole and Officer Logan did not contain any "indicia of reliability" necessary to make their seizure of defendant reasonable. *See Florida v. J.L.*, 529 U.S. 266, 271-72 (2000) (anonymous tip stating a black male wearing a plaid shirt at a bus stop was carrying a gun was insufficient to support the reasonable suspicion necessary to effect a stop under *Terry v. Ohio*, 392 U.S. 1 (1968)).  If Jackson were seized before he informed Agent Cole and Officer Logan that he was in possession of a firearm, his statement and all physical evidence must be suppressed as "fruit of the poisonous tree."

"[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. . . . a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980).  "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 554.

"An arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991).  A seizure occurs upon "the mere grasping or application of physical force with lawful authority . . . an arrest is

effected by the slightest application of physical force." *Id*. at 624-25.  Cases in the Third Circuit have held a seizure occurred upon minimal or no use of force by police officers.  *See*, *e.g.*, *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (seizure occurred when police officer told suspect he could not leave until being subjected to a pat-down frisk); *United States v. Nelson*, 2010 WL 4027818, at *2 (D.V.I. Oct. 13, 2010), *aff'd*, 2012 WL 1704132 (3d Cir. May 16, 2012) (seizure occurred when police officer asked defendant to approach the officer's car to be frisked and guided him there with a hand on his back); *United States v. Dupree*, 2009 WL 1475276, at *3 (E.D. Pa. May 27, 2009), *aff'd*, 617 F.3d 724 (3d Cir. 2010) (seizure occurred when police officer grabbed defendant by his elbow to temporarily stop his movement).

The court denied the motion to suppress because the totality of circumstances surrounding the encounter did not constitute a seizure.  *Florida v. Bostick*, 501 U.S. 429, 439 (1991).  Neither Agent Cole nor Officer Logan brandished a firearm or used language or a tone of voice indicating that compliance with their request was compulsory.  Jackson's motion to suppress was based solely on Agent Cole's and Officer Logan's touching him while walking to the back of the bar.

Although a seizure occurs upon the slightest application of physical force, the force employed must have an element of restraint.  *Hodari D.*, 499 U.S. at 626.  Agent Cole and Officer Logan touched Jackson only to guide him to the back of the crowded, noisy bar, not to physically restrain him.  Jackson consented to accompany them to the back of the bar, so there was no need for them to restrict his movement.  *See Laverdi v. Jenkins Twp.*, 49 F. App'x 362, 364 (3d Cir. 2002) (unpublished) (no seizure occurred when individual consented to leave town hall meeting and was escorted outside by a police officer).  Agent Cole's and Officer Logan's

touching Jackson reasonably can be seen as an attempt to communicate with him in a noisy environment where verbal communication was difficult; the contact did not change the consensual interaction to a compulsory one.

The court did not commit a clear error of law when it denied the motion to suppress; Jackson has failed to meet his burden of showing he should receive a new trial and his motion will be denied

### III. CONCLUSION

The court will deny Jackson's motion for acquittal and arrest of judgment on Count I, Count II, and Count IV; his motion for a new trial will also be denied.  An appropriate Order follows.